---

MARIA E. GONZALEZ,

        Plaintiff,

-v-

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
Performing the duties and functions not
reserved to the Commissioner of Social Security,

        Defendant.

17-CV-841-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. 9).

Plaintiff Maria E. Gonzalez brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's alternative motion (Dkt. 12) for remand is granted and the Commissioner's motion (Dkt. 14) is denied. The matter will be remanded for further development of the record in accordance with this decision.

## BACKGROUND

On September 11, 2009, Administrative Law Judge Stanley A. Moskal, Jr. ("ALJ Moskal") found Plaintiff disabled as of June 1, 2006. (Tr. 13, 110-116).[1] Born on January

---

[1] References to "Tr." are to the administrative record in this case.

20, 1985, Plaintiff was twenty-three years old at the time of the original application. (Tr. 59, 80). On May 7, 2014, Plaintiff was found no longer disabled as of May 16, 2014; this finding was upheld by a State Agency Hearing Officer. (Tr. 141-47, 148-55, 156-57). Plaintiff timely filed a request for a hearing before another ALJ. *Id.* A hearing was held on December 22, 2015 before Administrative Law Judge Eric L. Glazer ("ALJ Glazer"). ALJ Glazer reviewed Plaintiff's case *de novo* and on February 3, 2016, found Plaintiff had not become disabled again as of May 16, 2014. (Tr. 10-30). On June 28, 2017, the Appeals Council denied Plaintiff's request for review of ALJ Glazer's decision. (Tr. 1-5). This timely action follows.

## DISCUSSION

I. *Scope of Judicial Review*

This Court in reviewing a denial of disability benefits does not decide *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Instead, the Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its]

2

judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

II. *Standards for Determining "Continuing Disability" Under the Act*

A recipient of disability benefits is subject to periodic review for determining continued eligibility. 42 U.S.C. § 421(i). Thus, an individual "may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling" under the Social Security Act. 42 U.S.C. § 423(f). There is an eight-step evaluation process for Title II claims and a seven-step process for Title XVI claims to determine whether an individual continues to be disabled. 20 C.F.R. § § 404.1594, 416.994.

At step one for Title II claims, the Commissioner determines whether the individual is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1).[2] The Commissioner must find that the disability has ended if the individual is engaged in substantial gainful activity. *Id*. The Commissioner's analysis proceeds if the individual is not engaged in such activity.

At step two (or step one for Title XVI claims), the Commissioner determines whether the individual's impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 (the "Listing"). 20 C.F.R. § 404.1594(f)(2).

---

[2] This step does not occur for Title XVI claims.

The individual is still considered disabled if the Commissioner finds the impairment meets or equals an impairment or impairments in the Listing. *Id.* The Commissioner's analysis proceeds if the impairment does not meet or equal one in the Listing.

At step three (or step two for Title XVI claims), the Commissioner determines whether there has been medical improvement. 20 C.F.R. § 404.1594(f)(3). If there is no decrease in medical severity, there is no medical improvement. *Id.* Upon finding medical improvement, measured by a decrease in medical severity, the Commissioner's analysis proceeds.

At step four (or step three for Title XVI claims), the Commissioner determines whether the medical improvement found in step three is related to the individual's ability to do work in accordance with 20 C.F.R. §§ 404.1594(b)(1)-(4). Medical improvement is related to the ability to work if it results in an increase in the individual's ability to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If medical improvement is unrelated to the individual's ability to work, the Commissioner proceeds to step five. *Id.* If the medical improvement is related to the individual's ability to work the Commissioner proceeds to step six. *Id.*

At step five (or step four for Title XVI claims), the Commissioner considers whether the exceptions to medical improvement listed in 20 C.F.R. §§ 404.1594(d) and (e) apply to the individual's medical improvement. 20 C.F.R. § 404.1594(f)(5). If none apply, the individual's disability continues. *Id.*

At step six (or step five for Title XVI claims), if medical improvement is related to the individual's ability to do work or one of the exceptions applies, the Commissioner will determine whether the individual's impairments are severe. 20 C.F.R. § 404.1594(f)(6).

When the evidence shows that all current impairments do not significantly limit the individual's physical or mental abilities to perform basic work activities, the impairments are not severe, and the individual will no longer be considered disabled. *Id.*

At step seven (or step six for Title XVI claims), if the individual's impairments are severe, the Commissioner will assess his or her residual functional capacity based upon all current impairments and determine whether he or she is able to perform past work. 20 C.F.R. § 404.1594(f)(7). If capable of doing past work, he or she is no longer disabled. *Id.*

Finally, at step eight (or step seven for Title XVI claims), if the individual can no longer perform past work, the Commissioner must determine whether he or she is capable of other work given his or her residual functional capacity ("RFC") assessment and age, education, and previous work experience. 20 C.F.R. § 404.1594(f)(8). If the individual is capable, the disability will have ended. *Id.* If the individual is incapable, the disability is found to continue. *Id.*

III. *ALJ Glazer's Decision*

Here, ALJ Glazer applied the eight-step sequential analysis for Plaintiff's Title II claim and the seven-step sequential analysis for her Title XVI claim in determining whether disability ended on May 16, 2014. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity. (Tr. 15). At step two, the ALJ found Plaintiff's impairments did not meet or equal an impairment listed in Appendix 1, 20 C.F.R. Part 404, Subpart P. (Tr. 16). At step three, the ALJ found Plaintiff had medical improvement as of May 16, 2014. (Tr. 17). At step four, the ALJ found that Plaintiff's medical improvement related to her ability to work because Plaintiff's RFC was less restrictive than the one assessed in the original disability decision in 2009. (Tr. 23). At step five, the

ALJ found Plaintiff's impairments to be severe. (Tr. 23). At step six, the ALJ found that Plaintiff had no past relevant work. (Tr. 23). At step seven, considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff was able to perform work existing in significant numbers in the national economy. (Tr. 23-25). At step eight, the ALJ considered Plaintiff's claim for the period after May 16, 2014 and found Plaintiff had not become disabled again since that date. (Tr. 25). Consequently, ALJ Glazer determined that Plaintiff's disability ended on May 16, 2014 and since that date, has not become disabled again. (Tr. 25).

IV. *Plaintiff's Challenge*

Plaintiff contends (and the Commissioner concedes)[3] that ALJ Glazer did not have access to, and therefore did not review, the actual medical evidence upon which ALJ Moskal based his opinion that Plaintiff was disabled in 2009. (Dkt. 12 at 12-14; Dkt. 14 at 22). Plaintiff contends that ALJ Glazer was obligated to compare the actual medical evidence from her first disability case (the "comparison point decision") in 2009 with the actual evidence in the second case. Plaintiff, in other words, argues that merely reviewing ALJ Moskal's decision, which incorporated the 2009 medical findings therein, does not constitute substantial evidence because the ALJ did not in fact compare the actual evidence of the two cases as the regulation requires. (Dkt. 12 at 13-15); *see* 20 C.F.R. §§ 404.1594(c)(1). The Court agrees.

---

[3] The Commissioner states that "[a]lthough those earlier medical documents are not in this record, the record does contain the prior ALJ's detailed recitation of the medical evidence that was relied upon in the ALJ's RFC finding that resulted in the 2009 decision that Plaintiff was disabled." (Dkt. 14 at 22).

As an initial matter, the Court notes that ALJ Glazer was tasked with considering Plaintiff's case *de novo*.[4] *See, e.g., Blabac v. Comm'r of Social Sec.*, No. 3:08-CV-849 (GLS/VEB), WL 5167650 (N.D.N.Y. Dec. 18, 2009)(district court noted that the ALJ in reviewing a case for continuing benefits considered the case *de novo*); *see also* SSR 13-1p, 2013 WL 633939, at *2 (Jan. 29, 2013)("Our ALJs perform an essential role in ensuring that our administrative process is fair to claimants by conducting de novo, informal, non-adversarial hearings and issuing decisions for claimants who are dissatisfied with our determinations in claims arising under the Social Security Act."); *see also* 1 Soc. Sec. Disab. Claims § 5:2 *Role of the administrative law judge* (June 2018) ("Hearings are de novo.").

Additionally, it is apparent from the regulations that the Commissioner must review both the comparison point decision evidence with the evidence in the instant case. For example, the regulation detailing how the Commissioner determines whether an individual's disability continues states in part:

> (1) Medical improvement. Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined *by a comparison of prior and current medical evidence* which must show that there have been changes (improvement) in the *symptoms, signs or laboratory findings* associated with that impairment(s).

20 C.F.R. §§ 404.1594(c)(1) (emphasis added). Further, in deciding whether a claimant continues to be disabled, the ALJ is *required* to develop the medical record:

> In making any determination with respect to whether an individual is under a disability or continues to be under a

---

[4] Black's Law Dictionary defines a *de novo* hearing in part as "[a] new hearing of a matter, conducted as if the original hearing had not taken place." *De Novo Hearing, Black's Law Dictionary (10th ed. 2014).*

7

> disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C.A. § 423(d)(5)(B) (2011); *see also Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150–51 (2d Cir.1984) (The ALJ is required to "consider relevant and probative evidence which is available to him."). Therefore, a *de novo* hearing in this case would necessarily entail a comprehensive review of all evidence, including the actual evidence of symptoms, signs or laboratory findings, from the previous case in order to make the required comparison of the medical impairment(s) necessary to assess whether the impairment(s) increased, decreased, or remained the same.

Moreover, other courts reviewing comparable cases show that the second ALJ had the benefit of the evidence from the first case when making a continuing disability determination. *See, e.g., Amy T. v. Comm'r of Social Sec.*, No. 6:17-CV-1176 (MAD), 2018 WL 5297808, at *9 (N.D.N.Y. Oct. 25, 2018) (the second ALJ reviewed the comparison point decision's evidence of an MRI scan of plaintiff); *see also Norton v. Colvin*, No. 14-CV-646S, 2016 WL 787965 (W.D.N.Y. Mar. 1, 2016) (the second ALJ analyzed several medical reports from the comparison point decision); *see also Logins v. Astrue*, No. 10–CV–6060 CJS, 2011 WL 2555364, at *5 (W.D.N.Y. Jun. 27, 2011) (The second ALJ received "prior file" into evidence, "apparently referring to the aforementioned documentation from Plaintiff's earlier continuing disability reviews."). Taken as a whole,

the Court finds that the ALJ must review the record underlying the comparison point decision in order for the ALJ's decision to be based on substantial evidence.

## CONCLUSION

In sum, the Court finds that a full and fair hearing was not conducted due to the complete absence of the evidentiary record that formed the basis for the 2009 decision finding Plaintiff to be disabled under the Act. The Court finds that ALJ Glazer's decision was therefore not based on substantial evidence. The Court remands this matter to conduct a new hearing consistent with this decision. The Court does not reach a decision on the balance of arguments set forth by Plaintiff in light of the ordered remand for further proceedings.

**SO ORDERED.**

Dated: February 11, 2019
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge